# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| United States of America, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | **ORDER DENYING** |
| | ) | **DEFENDANT'S MOTION TO** |
| vs. | ) | **SUPPRESS EVIDENCE** |
| | ) | |
| Harold Hank Bolman, | ) | |
| | ) | Case No. 1:17-cr-035 |
| Defendant. | ) | |

On February 1, 2017, Harold Hank Bolman was charged in an indictment with the offense of involuntary manslaughter in violation of 18 U.S.C. §§ 1112 and 1153. See Docket No. 2. On December 10, 2017, Bolman filed a motion to suppress evidence. See Docket No. 34. In the motion, Bolman seeks the suppression of statements he made to law enforcement on July 25, 2016. The Government filed a brief in opposition to the motion on December 26, 2017. See Docket No. 37. An evidentiary hearing was held on January 23, 2018, in Bismarck, North Dakota. See Docket No. 40. For the reasons set forth below, the Court denies the motion to suppress.

## I. BACKGROUND

On July 25, 2016, Bureau of Indian Affairs Officer Raymond Webb responded to a 911-call in which the caller reported a person had been run over by a vehicle in Solen, North Dakota. Officer Webb testified that when he arrived at the scene, he encountered an intoxicated woman located near a pick-up truck. When Officer Webb spoke with the woman, she indicated the man underneath the pick-up truck 'took his last breath' about twenty minutes before Officer Webb arrived. Officer Webb testified he then discovered a deceased adult located under the

1

pick-up truck. The woman at the scene identified the deceased individual and she also identified the owner of the pick-up truck as "Hank," later identified as the Defendant, Harold Hank Bolman. Officer Webb then approached Bolman, who was sitting in a lawn chair, with his back to the pick-up truck, under a tree in the front yard of a nearby home.

Officer Webb testified that when he approached Bolman, he asked whether the pick-up belonged to him. Bolman responded by acknowledging he owned the pick-up truck. Officer Webb then asked Bolman if he knew the deceased man under the pick-up. Bolman responded affirmatively and indicated the deceased was his nephew Billy, later identified as William White Eagle. Officer Webb then asked what had happened. Bolman again responded by informing Officer Webb that he and Billy had been to Bismarck, returned to Solen, and had been drinking. Bolman then stated he was tired and decided to go home. When he left, he ran over White Eagle with his pick-up truck. Officer Webb then asked Bolman whether he pulled the pick-up truck forward after he ran over White Eagle. Bolman indicated that once he ran over White Eagle, he stopped the pick-up truck and got out. Finally, Officer Webb asked Bolman whether he had been drinking. Bolman admitted he had been drinking and that he and White Eagle had been drinking for several days. Officer Webb testified that he observed signs that Bolman was intoxicated at the time Officer Webb approached him: Bolman's breath smelled of alcohol and Bolman had slurred speech, as well as red and glassy eyes.

Officer Webb then placed Bolman under arrest and Bolman was subsequently charged with the involuntary manslaughter of White Eagle. Bolman now seeks to suppress his statements made to Officer Webb prior to his arrest, contending Officer Webb subjected him to a custodial interrogation without the benefit of a *Miranda* warning.

## II. LEGAL DISCUSSION

In his motion, Bolman contends law enforcement subjected him to a custodial interrogation without first being advised of his *Miranda* rights and, consequently, all statements he made to Officer Webb prior to his arrest should be suppressed. The Fifth Amendment of the United States Constitution provides a privilege against self-incrimination. Given this Fifth Amendment privilege, certain procedural safeguards must be employed prior to interrogation of an individual by law enforcement officers. Miranda v. Arizona, 384 U.S. 436, 444 (1966). It is well-established that law enforcement officers must administer *Miranda* warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Id. at 478-79. The basic rule of *Miranda* is that an individual must be advised of the right to be free from compulsory self-incrimination and the right to the assistance of an attorney when an individual is taken into custody for questioning. United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990)). Accordingly, *Miranda* requires that law enforcement officers advise an individual as to the availability of this privilege against self-incrimination and to the assistance of counsel when the individual is interrogated while in custody. Id. "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Miranda, 384 U.S. at 473-74.

"*Miranda* warnings are required when a suspect is interrogated while in custody." United States v. Aldridge, 664 F.3d 705, 711 (8th Cir. 2011). For purposes of *Miranda*, an individual is in custody when he is either formally arrested or his freedom of movement is constrained to a degree equivalent with formal arrest. United States v. Brave Heart, 397 F.3d

1035, 1038 (8th Cir. 2005). Custody depends on the totality of the circumstances, and the relevant factors, known as *Griffin* factors, to consider include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police-dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

Aldridge, 644 F.3d. at 711 (citing United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990)). The presence of the first three *Griffin* factors tends to mitigate against a finding of custody, while the presence of the last three *Griffin* factors tends to favor a finding of custody. United States v. Giboney, 863 F.3d 1022, 1027 (8th Cir. 2017). Ultimately, the test is whether a reasonable person in that position would have felt free to end the interview. Id. Moreover, the Eighth Circuit has recognized *Miranda* warnings are not required "for general on-the-scene questioning as to the facts surrounding a crime" because such questioning does not present "the compelling atmosphere inherent in the process of in-custody interrogation." United States v. Howard, 532 F.3d 755, 761 (8th Cir. 2008)(quoting Miranda, 384 U.S. at 477-78)).

In this case, the factors outlined in *Griffin* weigh strongly in favor of a finding that Bolman was not in custody when Officer Webb questioned him about the incident while Bolman sat in a lawn chair in the front yard of a house. First, the Government acknowledged in its brief, and the Court agrees based upon testimony presented at the suppression hearing, "Bolman was not informed the questioning was voluntary, he was free to leave or request the officer to do so, or that he was not considered under arrest." See Docket No. 37, p. 6. The Court therefore finds the first *Griffin* factor weighs in favor of custody. See Griffin, 922 F.2d

4

at 1349. However, the second *Griffin* factor, namely whether the Bolman possessed unrestrained freedom of movement during questioning, weighs in favor of finding Bolman was not in custody. Aldridge, 644 F.3d. at 711. Officer Webb testified at the suppression hearing he did not restrain Bolman's movement in any way while asking questions. In fact, at one point, Officer Webb assisted Bolman in getting up and moving from his lawn chair. This second *Griffin* factor weighs in favor of finding Bolman was not in custody. See Griffin, 922 F.2d at 1349.

The Court then turns to the third *Griffin* factor: Whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions. See Aldridge, 644 F.3d. at 711. It appears the Defendant did not initiate contact with Officer Webb. See Docket No. 35, p. 4. However, even if Bolman did not initiate contact with Officer Webb, Bolman was not reluctant to answer Officer Webb's questions. Bolman could have simply not responded to Officer Webb's questioning. Instead, Bolman courteously responded to Officer Webb's questions and was willing to explain what happened to White Eagle. See United States v. Axsom, 289 F.3d 496, 501-02 (8th Cir. 2002) (finding suspect's cooperative and courteous nature during an interview supported a finding of voluntary acquiescence to respond to questions). Many times, Bolman provided information beyond the scope of Officer Webb's questions. The Court finds the third *Griffin* factor weighs in favor of finding Bolman was not in custody. The Court similarly concludes the fourth *Griffin* factor weighs in favor of a finding that Bolman was not in custody. There was no evidence presented that Officer Webb used strong arm tactics or deceptive statagems while questioning Bolman. See Griffin, 922 F.2d at 1349. The record reveals the conversation between Officer Webb and Bolman was casual, non-

confrontational, and professional. This was the type of general on-the-scene questioning as to "what happened" that clearly does not require *Miranda* warnings.

The Defendant contends the fifth *Griffin* factor, namely whether the atmosphere of questioning was police dominated, weighs in favor of a finding of custody because "Webb completely dominated the questioning" and Bolman did not volunteer any information or ask any questions. See Docket No. 35, p. 5. In determining whether Officer Webb's questioning was police dominated, the Court considers "the entire context of the questioning, including such considerations as place and length of interrogation." Griffin, 922 F.3d 1352. The questioning was not a lengthy interrogation; consisting of only a few questions of what had happened. Only Officer Webb questioned Bolman; in fact, no other officers were present at the scene. Further, the questioning took place in the front yard of a home, as opposed to a police operated building. See United States v. Brown, 990 F.2d 397, 400 (8th Cir. 1993) (finding the atmosphere of questioning was not police dominated when officers approached suspect in front lawn of his home, but interviewed him inside the home, because the suspect would feel more comfortable in his home, as opposed to a police-operated facility).[1] In addition to Bolman, another individual was present at the scene, and Officer Webb did not purposefully seclude Bolman from the other individual present at the scene. See Griffin, 922 F.2d at 1352. Therefore, the Court concludes the fifth *Griffin* factor weighs in favor of finding Bolman was not in custody. See Griffin, 922 F.2d at 1349.

---

[1] The Court acknowledges Bolman was not in the front yard of his home at the time Officer Webb asked him questions. Nonetheless, the Court is persuaded, based upon the testimony elicited at the suppression hearing, the environment under which the questioning occurred was relaxed and comfortable for Bolman, compared to the environment of a jailhouse.

Last, it is clear to the Court the sixth *Griffin* factor weighs in favor of a finding that Bolman was in custody because Bolman was arrested shortly after Officer Webb questioned him. See Griffin, 922 F.2d at 1349. The Government acknowledges such in its brief. See Docket No. 37, p. 4. Nonetheless, based on a careful consideration of the *Griffin* factors and an analysis of the totality of the circumstances, the Court finds Bolman was clearly not in custody for the purpose of *Miranda* when Officer Webb inquired about the incident. Because the Court concludes Bolman was not in custody at the time he was questioned by Officer Webb, the Court need not determine whether the questioning by Officer Webb was an interrogation for the purposes of *Miranda*. The questioning in this case was casual, professional, and the type of "on-the-scene" questioning that does not warrant a *Miranda* warning. Thus, Bolman's statements to Officer Web prior to Bolman's arrest on July 25, 2016, are admissible.

### III. **CONCLUSION**

The Court has carefully reviewed the entire record, the parties' arguments, the evidence presented at the suppression hearing, and the relevant case law. For the reasons outlined above, the Court **DENIES** Bolman's motion to suppress (Docket No. 26). All statements by Bolman to Officer Webb are admissible because Bolman was not subjected to a custodial interrogation.

**IT IS SO ORDERED.**

Dated this 25th day of January, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

7